NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOCTORS ASSOCIATES, INC., | Civ. Action No. 10-575 |
| Plaintiff, | **OPINION** |
| v. | |
| JESAL DESAI a/k/a JESAL PATWARI, et al. | |
| Defendants. | |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.     INTRODUCTION**

Plaintiff/claimant Doctor's Associates, Inc. ("DAI") seeks confirmation of an arbitration award secured against defendant/debtor Jesal Patwari, d/b/a Jesal Desai ("Patwari") and Patwari's companies, corporate defendants/debtors Shapat, Inc., Shapat II, LLC, Shapat III, LLC, and Patwari, LLC (collectively, "Corporate Debtors"). DAI also seeks remedy for various trademark claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Patwari counterclaims asserting various state-law contract claims against DAI and third-party defendant Subway Real Estate Corp. ("Subway") based on the parties' franchise agreement. After Patwari and Corporate Debtors[1] filed separately for chapter 11 bankruptcy, this case was referred to bankruptcy court by

---

[1] For simplicity the defendants, meaning Patwari and her companies (the corporate defendants), will be referred to as solely "Patwari" throughout.

Judge William J. Martini of this District, and it was later re-assigned to this Court on May 19, 2010.

DAI and Subway have moved for an order withdrawing the reference pursuant to L.B.R. 5011-1 and 28 U.S.C. § 157(d) [D.E. 1]. DAI and Subway ask this Court to sever and take back their adversary proceeding from the bankruptcy proceeding.

**II.     BACKGROUND**

Patwari owned and operated four Subway sandwich shops in New Jersey. (Chap. 7 Opp'n Br. 2; Compl. ¶ 17.) She had entered into franchise agreements with DAI, owner of the Subway franchise. (Compl. ¶ 17.) DAI's claim initially arises out of Patwari's failure to pay royalties allegedly due under the franchise agreements. (*Id.* at ¶ 26.) DAI claims Patwari underreported sales figures to avoid paying the full royalty percentage owed to DAI as the franchisor. (*Id.* at ¶ 30.) DAI and Patwari began the arbitration process. (Chap. 7 Opp'n Br. 2.) Patwari's attorney, Susheela Verma, failed to appear at the arbitration after her adjournment request was denied. (Reply Br. 4-5.) On September 6, 2007, without Verma's participation, the arbitrator decided the matter on DAI's proofs. (Id.) The arbitrator terminated each of the franchise agreements and awarded DAI money damages. (Turkish Cert. ¶ 4, attached to DAI Support Br.; Compl. ¶ 97.)

Patwari filed suit in New Jersey state court for a declaratory judgment that the franchise agreements were unenforceable under state contract law. (Chap. 7 Opp'n Br. 3.) On February 1, 2008, the Honorable Kenneth Levy, J.S.C., entered a preliminary injunction to stay enforcement of the arbitration award pending a final hearing. (*Id.*)

While the state lawsuit was pending, DAI filed the within lawsuit in district court on July 8, 2008, seeking enforcement of the arbitration awards and relief for trademark infringement. (Turkish Cert. ¶¶ 3-4, attached to DAI Support Br.; Chap. 7 Opp'n Br. 4.) Subsequently, the state lawsuit was removed to federal court and consolidated with the trademark infringement suit. On August 18, 2008, Judge Martini granted a preliminary injunction against Patwari's use of Subway trademarks. Patwari filed a notice of appeal with the Third Circuit two days later. That appeal is pending.

On August 28, 2008, Patwari filed separate chapter 11 bankruptcy petitions.[2] One day later, Patwari filed an answer and third-party complaint to DAI's federal complaint that asserted common law contract law claims against DAI and third-party defendant Subway. (*Id.* at 5.)

On September 11, 2008, Bankruptcy Judge Novalyn Winfield granted relief from the automatic stay to allow the current litigation to move forward. (Judge Winfield Order, Sept. 11, 2008, Exh. A attached to Turkish Cert., attached to DAI Support Br.) Shortly thereafter, Patwari moved to refer the pending matters to the bankruptcy court. (Chap. 7 Opp'n Br. 5.) DAI opposed the referral and cross-moved for: (1) dissolution of the state court preliminary injunction; (2) dismissal of all claims brought by Patwari pursuant to Fed. R. Civ. P. 12(b)(6); (3) judgment on the pleadings to confirm the arbitration awards pursuant to Fed. R. Civ. P. 12(c); and (4) judgment on the pleadings regarding Subway's landlord-tenant complaints also pursuant to Fed. R. Civ. P. 12(c). (*Id.* at 5-6; Exh. B attached to Turkish Cert., attached to DAI Support Br.) In early January 2009, Judge Martini granted Patwari's motion to refer the federal lawsuit with the pending dispositive motions described above, to bankruptcy court. He also granted

---

[2] The corporate defendants filed a separate chapter 11 petition from that filed by Jesal Patwari.

DAI's motion to vacate the state court's preliminary injunction. (Chap. 7 Opp'n Br. 6; Turkish Cert. ¶ 3, attached to DAI Support Br.)

Patwari made a motion for abstention before Judge Winfield in an attempt to return the case to state court, which she denied on May 5, 2009. (DAI Support Br. 6.) Shortly thereafter, in June of 2009, the United States Trustee handling the bankruptcy proceedings moved to dismiss the chapter 11 bankruptcy cases or convert them to chapter 7 bankruptcy cases. (Chap. 7 Opp'n Br. 1.) When Judge Winfield granted the chapter 7 conversions on July 20, 2009, DAI moved for equitable remand and/or withdrawal of the reference in an attempt to return the case to the district court. (Turkish Cert. ¶¶ 5-6, attached to DAI Support Br.; Chap. 7 Opp'n Br. 2.) The motion to remand the case to district court was held in abeyance while newly appointed chapter 7 trustees assessed the cases. (DAI Support Br. 7; Chap 7 Opp'n Br. 2; Turkish Cert. ¶ 6, attached to DAI Support Br.) Also at this time, the bankruptcy court allowed DAI to withdraw without prejudice its motion to withdraw the reference to bankruptcy court. (Turkish Cert. ¶ 6, attached to DAI Support Br.) On December 15, 2009, the bankruptcy court denied DAI's motion to remand the case to district court. (DAI Support Br. 7; Chap. 7 Opp'n Br. 2; Turkish Cert. ¶ 7, attached to DAI Support Br.)

During the time between the conversion of the bankruptcy proceedings from chapter 11 to chapter 7 and the denial of DAI's motion to remand, one of the chapter 7 trustees sought discovery production and a deposition of third-party defendant Yogesh Dave in an attempt to discover assets. (DAI Support Br. 8; Turkish Cert. ¶ 10, attached to DAI Support Br.; DAI Reply Br. 2.) That effort began, but has been held in abeyance in light of the present motion to withdraw. (Chap. 7 Opp'n Br. 7.) Also during the time between the conversion and the denial of

DAI's motion to remand, DAI and Subway filed proofs of claims in the bankruptcy court that mirrored the original complaint. (*Id.* at 7, 9.)

Following the denial of its motion to remand, DAI re-filed, in this Court, its motion to withdraw the reference to bankruptcy court. Shortly thereafter, defendants' attorney Susheela Verma withdrew from the case. (*Id.* at 6.) Due to some difficulty in obtaining documents from Verma, the chapter 7 trustee asked for, and the bankruptcy court granted, an order to turn over all documents relevant to the chapter 7 trustee's investigation. (*Id.* at 6.) The dispositive motions remain pending.

### III. STANDARD OF REVIEW

Withdrawal of a case referred to bankruptcy is grounded in 28 U.S.C. § 175(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first prong of § 175(d) provides for permissive withdrawal, and the second requires mandatory withdrawal.

#### *A. Permissive Withdrawal*

With regard to permissive withdrawal, courts in this District have held that a threshold issue is whether or not the proceeding is a "core" or "non-core" proceeding under § 157(b)-(c). *Katz v. Karagjozi (In re Kara Homes, Inc.)*, 2009 U.S. Dist. LEXIS 63215, at *3 (D.N.J. 2009) (Cooper, J.) (concluding that the motion to withdraw the reference was premature because a

core/non-core determination was not yet made by the bankruptcy court). A non-exclusive list of core proceedings is listed in § 157(b)(2). In addition, the Third Circuit has held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Corestates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 (3d Cir. 1999) (quoting *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996) (citations omitted)). Non-core proceedings are all those remaining proceedings that meet the *Pacor* test for bankruptcy jurisdiction but are not so closely related to the bankruptcy case as to be deemed core proceedings. *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999). "This determination must be made by the Bankruptcy Court on its own motion or by motion of a party." *Katz*, 2009 U.S. Dist. LEXIS 63215, at *3 (citing 28 U.S.C. 157(b)(3)). *But see Harley Hotels, Inc. v. Rain's Int'l, Ltd.*, 57 B.R. 773, 776 (M.D. Pa. 1985) (finding that concerns for judicial economy dictated that the district court render a decision on whether a proceeding was core or non-core). The distinction defines the bankruptcy court's jurisdictional role because in non-core proceedings "the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court for de novo review and the entry of final judgment." *In re East West Trade Ptnrs., Inc. v. Sobel WP, LLC (In re East West Trade Ptnrs., Inc.)*, 2007 U.S. Dist. LEXIS 29645, at *8-9 (D.N.J. 2007) (Kugler, J.) (citing *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990)) (dismissing a motion to withdraw because it was heavily predicated on the proceeding being non-core).

Once the threshold issue is resolved, district courts should consider "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the

bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir. 1990) (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).  Other factors that may be considered are "the timing of the request for withdrawal, the utilization of the bankruptcy judge's expertise, and the preservation of the appellate process set forth by the Bankruptcy Act."  *In re Nickels Midway Pier, L.L.C.*, 2010 U.S. Dist. LEXIS 7366, at *9 (D.N.J. 2010) (Hillman, J.) (citing *In re Pruitt*, 910 F.2d at 999).

### B. Mandatory Withdrawal

Section 157(d) states that mandatory withdrawal is proper whenever a proceeding involves both title 11 bankruptcy law and other federal law that impact interstate commerce. However, district courts in this Circuit have narrowly construed the statute to mandate withdrawal only when "the matter involves the 'substantial and material' consideration of federal law outside the Bankruptcy Code rather than the routine application of such law."  *Wile v. Household Bank, F.S.B. (In re Wile)*, 2004 U.S. Dist. LEXIS 9141, at *6-7 (E.D. Pa. 2004) (citing *In re Smith Corona Corp.*, 205 B.R. 712, 714 (D. Del. 1996)).  See also *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1006-07 (D.N.J. 1986) (Barry, J.) (emphasis added) ("Thus, in addition to the statutory prerequisite that a motion seeking mandatory withdrawal be timely filed, the moving party must establish that the proceeding involves a *substantial and material question* of *both* Title 11 and non-Code federal law and that the non-Code federal law has *more than a de minimis effect* on interstate commerce.").

## IV.   DISCUSSION

### A. Mandatory Withdrawal

As identified in *In re Anthony Tammaro*, 56 B.R. at 1007, withdrawal under 28 U.S.C. § 157(d) is only mandated when there is "a substantial and material question of both Title 11 and non-Code federal law and . . . the non-Code federal law has more than a *de minimis* effect on interstate commerce." *See also In re Quaker City Gear Works, Inc.*, 128 B.R. 711, 714 (E.D. Pa. 1991) ("[W]ithdrawal of reference is denied where only routine application of established legal standards is called for or when it is not clear that application and interpretation of statutes other than the Bankruptcy Code will be necessary to resolve the case."); *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 221 (D.N.J. 2003) (Bassler, J.) ("Courts interpreting the term 'consideration' under § 157(d) have found that mandatory withdrawal is required only if the proceedings cannot be resolved without 'substantial and material consideration of non-bankruptcy laws.'" (quoting *In re Anthony Tammaro*, 56 B.R. at 1006)). Just recently the Second Circuit held that a malpractice action filed in state court against an attorney who represented the debtor in a bankruptcy proceeding can be removed to federal bankruptcy court because the malpractice claim "would have no existence outside of the bankruptcy." *Baker v. Simpson*, 2010 U.S. App. LEXIS 15748, at *11 (2d Cir. 2010) (citations omitted). The fact that Congress allows bankruptcy courts to hear non-core cases and submit them for *de novo* review supports a narrow reading of mandatory withdrawal and prevents it from becoming an "escape hatch" back to the district courts. *In re G-I Holdings*, 295 B.R. at 221 (citing *In re Mahlmann*, 149 B.R. 866, 870 (N.D. Ill. 1993)).

While DAI filed claims involving the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, *et seq.*, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*, both "non-Code federal law" (DAI Support Br. 13), substantial and material consideration of these laws is not required. DAI is not asking the Court to enforce an arbitration agreement; it is merely asking the Court to confirm arbitration

awards already granted by an arbitrator. Likewise, DAI's Lanham Act claims do not require "substantial and material" consideration for the resolution of the case. The claimed trademark infractions appear to be contingent upon the validity of the arbitration award, which terminated the franchisee's rights to continue to operate the Subway sandwich shops. (*Id.* at 16-18.)

It is therefore unlikely that the bankruptcy court will need to engage in novel analysis of federal law. DAI's true concern regarding the application of the FAA appears to stem from its concerns that the state court had misapplied the federal act. (*Id.* at 17.) In its argument before the federal courts, DAI claims that the federal law is clear and cites two nearly identical cases in which they were a party to illustrate their argument. (DAI Reply Br. 3 n.1.)

In structuring its argument thus, DAI establishes that the bankruptcy court, an Article I federal court, is equipped to handle its straightforward federal law-based claims, which are the type of claim frequently identified as resolvable in bankruptcy court. *See, e.g.*, *Young v. Snider*, 1994 U.S. Dist. LEXIS 2901, at *7 (E.D. Pa. 1994) (rejecting mandatory withdrawal where application of Food Stamp Act was simple and did not requiring probing for congressional intent); *In re Wile*, 2004 U.S. Dist. LEXIS 9141, at *6-7 (holding that straightforward application of the Truth in Lending Act by a bankruptcy court did not trigger mandatory withdrawal and finding the motion was "a belated instance of forum shopping"). Consistent with these decisions, the Court concludes that mandatory withdrawal of the claims at issue here is not warranted.

### B.  Permissive Withdrawal

*i. Threshold Matter: The Core/Non-Core Distinction*

9

As a threshold matter, when determining whether a case is right for permissive withdrawal, a court must first considered whether each claim is or is not core to the bankruptcy proceedings under 28 U.S.C. § 157(b)-(c). *In re Kara Homes*, 2009 U.S. Dist. LEXIS 63215, at *3. It is the role of the bankruptcy court to make this determination in the first instance, either by its own motion or by motion of a party. *Katz*, 2009 U.S. Dist. LEXIS 63215, at *3 (citing 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.")). For the sake of judicial efficiency, the remainder of this opinion will assume that the claims are non-core for purposes of evaluating the remaining factors for permissive withdrawal. *Harley Hotels*, 57 B.R. at 776 (finding that concerns for judicial efficiency dictated that the district court render a decision on whether a proceeding was core or non-core).

### ii. *Uniformity in bankruptcy administration*

The first factor that the Court will consider is whether or not bringing the case back to the district court will promote uniformity in bankruptcy administration. DAI asserts that the remaining assets in the bankruptcy proceedings appear to be lawsuits against DAI and Subway or against Patwari's previous counsel. (DAI Support Br. 13-14.) The latter claim, which is related to the DAI and Subway action against Patwari, is currently being pursued by the Chapter 7 Trustee of Patwari's bankruptcy proceeding. (Chap. 7 Opp'n Br. 7; Reply Br. 2.) Both claims relate to the prior arbitration and currently both are within the bankruptcy court. (The suit against Patwari's previous counsel may be the largest asset in the bankruptcy proceedings.) Allowing this adversary proceeding to remain in the bankruptcy court would promote uniformity in bankruptcy administration because there may be possible overlap in discovery between the

two cases. *Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*, 325 B.R. 372, 378 (W.D. Pa. 2005) ("Allowing one court to steer the same group of parties through factual discovery related to this adversary proceeding will promote administrative uniformity. Substantive uniformity will also be served by allowing one court to determine how the bankruptcy negotiations and plan terms affect the insurance contracts, which are most likely the largest asset of the estate.").

Additionally, DAI and Subway have filed proofs of claims in the bankruptcy court. (Chap. 7 Opp'n Br. 7.) If the Chapter 7 Trustee decides to contest a proof of claim filed by DAI or Subway, that trustee will in effect be challenging the adversary proceeding. The fact that the claims are nearly identical to the underlying adversary proceeding supports leaving the case in bankruptcy court.

### iii. *Reducing forum shopping and confusion*

The prevention of forum shopping and confusion is the second factor to be considered by a district court in determining whether a case should be withdrawn from bankruptcy court. Historically, his case has zigged and zagged in and out of different forums. It began in arbitration, where DAI obtained an arbitration award. The franchisee challenged the arbitration by bringing a state court action. (Chap. 7 Opp'n Br. 3.) DAI and Subway instituted a federal lawsuit and removed the state case to federal court. Motion practice ensued. The federal judge referred the litigation to bankruptcy court. The dispositive motions are pending. (*Id.* at 4, 6)

It appears that DAI's concerns about misapplication of the Federal Arbitration Act are the motivating factor in seeking withdrawal. (*Id.* at 17.) But "securing a more friendly forum . . . is not a valid reason for a district court to withdraw reference of a proceeding properly pending before the bankruptcy court." *In re Am. Capital Equip.*, 325 B.R. at 378-79.

*iv. Fostering the economical use of the debtors' and creditors' resources and judicial efficiency*

Judge Winfield is familiar with the matter, having already decided prior motions.  The Chapter 7 Trustees have also familiarized themselves with the case.  One trustee appears to be exploring an ancillary lawsuit to this adversary proceeding against Patwari's former counsel for legal malpractice.  (DAI Reply Br. 2.)  If that lawsuit does come to fruition, there may be parties in this adversary proceeding who will need to appear in that lawsuit.  In fact, the Chapter 7 Trustee has commenced a deposition, which is related to discovering assets in the estate, with at least one third-party defendant.  (*Id.* at 2-3.)  If the Court withdrew the case, there would undoubtedly be new problems and fresh delays. Limiting administrative waste and allowing the bankruptcy court more flexibility in scheduling and adjudicating both matters are important values served by denying the motion to withdraw the reference.

*v. Expediting the bankruptcy process*

DAI believes that once dispositive motions are heard, the rest of the case should flow naturally.  (DAI Support Br. 17-18.)  These dispositive motions have been before the bankruptcy court for some time, and allowing that court to finally hear those motions after delays by both parties should foster resolution of all matters before the bankruptcy court.

*vi. Other factors*

Other factors that may be considered are "the timing of the request for withdrawal, the utilization of the bankruptcy judge's expertise, and the preservation of the appellate process set forth by the bankruptcy act."  *In re Nickels Midway Pier*, 2010 U.S. Dist. LEXIS 7366, at *9 (citing *In re Pruitt*, 910 F.2d at 999).  It is unnecessary to examine further how these factors are advanced by denying the reference given the foregoing discussion in this opinion.

### C. *DAI's other concerns*

DAI expressed concern that its case would be dismissed after the dispositive motions are heard if the matter remains in the bankruptcy court because no assets would be left. (DAI Support Br. 9-10.) The Court interprets this is a speculative argument at best. DAI has not cited any case law to lend credence to this belief. There is authority that even if the underlying bankruptcy matter were dismissed, the bankruptcy court may not be without jurisdiction to hear the adversary proceeding. *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995) ("[T]he dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending."). If the bankruptcy is dismissed, "[t]he [bankruptcy] court has discretion to retain jurisdiction of an adversary proceeding after dismissal of the main case based on considerations of: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involve." *Trusty v. Monument St. Funding (In re Trusty)*, 2007 Bankr. LEXIS 3831 (Bankr. E.D. Pa. 2007) (citing *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989)). As previously discussed these three factors apply, without question, to this case.

### V. CONCLUSION

Based on the foregoing, DAI's motion to withdraw the reference of the case to bankruptcy is denied. An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.